# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **LIBERTARIAN PARTY OF NEW HAMPSHIRE,** )<br>)<br>and )<br>)<br>**JO JORGENSON** )<br>)<br>and )<br>)<br>**SPIKE COHEN,** )<br>)<br>and )<br>)<br>**DARRYL PERRY,** )<br>)<br>and )<br>)<br>**JUSTIN O'DONNELL** )<br>)<br>and )<br>)<br>**ZACK DUMONT** )<br>)<br>and )<br>)<br>**ANDREW OLDING,** )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>**GOVERNOR CHRISTOPHER T. SUNUNU** )<br>**In his official capacity as Governor of the State of New Hampshire** )<br>)<br>and )<br>)<br>**WILLIAM GARDNER,** )<br>**in his official capacity as Secretary of State of the State of New Hampshire,** )<br>    Defendant )<br>) | Civil Case No.: 1:20-cv-00688 |

1

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The basic facts and law underlying this Motion should not be in significant dispute. That fundamental First Amendment rights are implicated is clear. Even more important than the rights of the candidates, are the "interests of the voters who choose to associate together to express their support [of the candidate] and the views he espoused." Anderson v. Celebrezze, 460 U.S. 780, 806 (1983). Ballot access restrictions are only sustainable to the extent they are made necessary by legitimate state interests. Id. at 789. States are required to provide political parties and candidates with a feasible route to get on to the general election ballot. If the existing route is infeasible or excessively burdensome, there is a constitutional obligation to provide an alternative. There is a special federal interest since the same nomination papers requirement also restricts access by presidential and vice presidential candidates.

    I.        Probability of Success on the Merits

        In all four cases that have reached a decision at the federal and

state appellate court level, the courts have found that enforcing the statutorily required signature requirements in order to secure a place on the ballot during the conditions of the pandemic would place a severe and unconstitutional burden on the First Amendment rights of the parties and candidates seeking ballot access. These decisions have acknowledged that the states have a legitimate interest in signature requirements for ballot access in order to prevent ballot clutter and related concerns. However, those requirements are far more onerous during the conditions of the pandemic, and hence must be narrowly tailored to the states' legitimate interests. <u>Esshaki v. Whitmer</u>, 2020 WL 2185553, ____ Fed. Appx.____ (6th Cir. May 5, 2020); <u>Libertarian Party of Pennsylvania v. Pritzker</u>, 2020 WL 1951687 (N.D. Ill., April 23, 2020); <u>Garbett v. Herbert</u>, 2020 WL 2064101 (D. Ut. 4/29/2020); <u>Goldstein v. Galvin</u> (Mass. SJC-12931) (4/17/2020). Plaintiffs should not be required to place their health, or the health of their supporters, at risk in order to secure their constitutional rights.

As applied to the Libertarian party of New Hampshire under the conditions of the pandemic, the New Hampshire ballot access requirements are not narrowly tailored because the Party has already demonstrated through its performance in past election

cycles that it has sufficient community support to merit ballot placement, and that such placement would cause neither clutter nor confusion.

II.	Irreparable Harm

The loss of the fundamental exercise of First Amendment rights to participate in the electoral process as candidates for general election, and to have the opportunity to support other candidates of the Party cannot be compensated by a financial award. Not only would that loss negate the Party's raison d'etre in this election cycle, it could also have serious consequences for future cycles. Securing ballot access is the heart and soul of any political party without which its First Amendment protected activities would be deprived of a meaningful outlet. As the Court has stated, "the right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast for one of two parties at a time when other parties are clamoring for a place on the ballot". Williams v. Rhodes, 393 U.S. 23, 31 (1968).

### III. The Balance of the Equities

As well as being a constitutional entitlement, the placement of the Plaintiffs on the general election ballot is a matter of fundamental fairness and equity. They have demonstrated through numerous election cycles that under normal circumstances they would have the capability and determination to secure the necessary nomination signatures. It would be fundamentally unfair to deny them that opportunity in this cycle based on a set of circumstances entirely outside of their control. By contrast, the granting of the requested relief would not have any adverse consequence upon the State.

### IV. The Public Interest

The granting of this petition will give voters of the State of New Hampshire an additional slate of candidates and point of view to select from. It cannot be reasonably claimed that having one more set of candidates would cause either ballot clutter or confusion.

### V. Requested Relief

The principal relief requested by the Plaintiffs, which would render any other relief unnecessary, is that they be placed on the ballot without being required to submit nomination papers in recognition of the fact that they have demonstrated through past election cycles that they would likely have been able to secure the number of required nomination papers but for the emergency circumstances entirely outside of their control. This relief falls squarely within the fundamental principle that where a candidate or party is blocked from ballot access despite having a demonstrated history of community support, that the appropriate remedy is for the court to order the candidate be placed on the ballot. McCarthy v. Briscoe, 429 US 1317 (1976) (Powell, J., chambers). See Libertarian Party v. Pritzker, supra (accepting parties' agreed upon order which provides in part for ballot access for previously qualifying party and independent candidates).

A further benefit of the requested relief is that it does not require the court to attempt to calibrate the degree to which the normal nomination paper requirements should be modified under the circumstances of the pandemic or otherwise intervene in the details of election administration. And a ruling in the Plaintiffs' favor would have no

impact on these requirements for subsequent elections under post-pandemic conditions.

VI. <u>No Bond is necessary</u>

No security is needed in this case as the requested preliminary relief would not cause any financial harm to the State.

Respectfully submitted,

Libertarian Party of
 New Hampshire

By It's attorneys,

Backus, Meyer & Branch, LLP

Dated:     6/9/20            By:        /s/ Jon Meyer
                                        Jon Meyer, NH Bar # 1744
                                        116 Lowell Street, P.O. Box 516
                                        Manchester, NH 03105-0516
                                        603-668-7272
                                        *jmeyer@backusmeyer.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been delivered electronically to New Hampshire Attorney General, Gordon MacDonald, this 9th day of June, 2020.

   /s/ Jon Meyer
Jon Meyer