UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
*************************************
LIBERTARIAN PARTY OF                 *
NEW HAMPSHIRE, et al                 *
                                     *
          Plaintiffs,                *
     v.                              *      Civil No. 1:20-cv-00688-JL
                                     *
GOVERNOR CHRISTOPHER T.              *
SUNUNU, Governor of the State of     *
New Hampshire, in his official capacity, *
                                     *
          And                        *
                                     *
WILLIAM M. GARDNER, Secretary of     *
State of the State of New Hampshire, *
in his official capacity,            *
                                     *
          Defendants.                *
                                     *
*************************************
```

## **PROPOSED FINDINGS OF FACT**

NOW COME Governor Christopher T. Sununu, in his official capacity as Governor of the State of New Hampshire ("Governor") and William M. Gardner, in his official capacity as Secretary of State for the State of New Hampshire ("Secretary of State") (collectively "State"), by and through their counsel, the New Hampshire Office of the Attorney General, and submit this Supplemental Statement of Facts, state as follows:

### **Introduction**

Per this Court's order, the parties submitted a joint statement of undisputed facts. The following comprises additional facts the State proposes in addition to those included in the joint statement.

1

**Proposed Findings of Fact**

1. In 2014, New Hampshire amended its election statutes with the effect of reducing the time in which to gather signatures from twenty-one months to seven months. *Libertarian Party of New Hampshire v. Gardner*, 126 F.Supp.3d 194, 201 (D.N.H. 2015).

2. Plaintiff the Libertarian Party of New Hampshire ("LPNH") argued that it was practically impossible to collect nomination papers during the winter months. *Id.*

3. This Court rejected that argument. *Id.* at 202.

4. The United States Court of Appeals for the First Circuit rejected that argument. *Libertarian Party of New Hampshire v. Gardner,* 843 F.3d 20, 29 (1st Cir. 2016)

5. This Court held that New Hampshire's signature gathering requirements did not constitute a severe burden on the LPNH's access to the ballot and did not, therefore, infringe its First Amendment Rights. *Libertarian Party of New Hampshire*, 126 F.Supp.3d at 206.

6. The United States Court of Appeals for the First Circuit affirmed this Court's decision. *Libertarian Party of New Hampshire v. Gardner,* 843 F.3d at 33.

7. From August 1, 2020 to September 23, 2011, LPNH collected 13,787 signatures. *Id.* at 23. *Libertarian Party of New Hampshire*, 126 F.Supp.3d at 198-199.

8. August 1, 2020 to September 23, 2020 is a period of 53 days.

9. LPNH collected 260 nomination papers per day during that period.

10. In the month of December, 2011, LPNH collected over 1,000 signatures. *Id.* at 202.

11. On one day in July 2012, LPNH gathered 1,700 signatures. *Libertarian Party of New Hampshire,* 843 F.3d at 23.

12. In 2012, LPNH spent approximately $40,000 to gather 19,000 signatures. *Id.*

13. As of July 14, 2020, LPNH has raised $33,264.00 for a ballot drive to collect nomination papers.

14. In 2012, paid petitioners charged between $1 and $2 per signature. *Libertarian Party of New Hampshire*, 126 F.Supp.3d at 198.

15. In 2011-12, LPNH also gathered 3,000-4,000 signatures through volunteers. *Id.*

16. In 2012, LPNH assumed a 75% nomination paper validity rate. *Id.*

17. For 2020, a 75% validity rate would require 4,000 raw petitions for statewide offices and 2,000 raw petitions for each congressional district.

18. In 2016, LPNH gathered between 3,000 and 4,000 valid signatures.

19. Each nomination paper contains the signature of the registered voter along with that voter's domicile and mailing addresses.

20. LPNH's nomination papers list candidates for president, senator, representative and governor.

21. LPNH needs, therefore, no more than 3,000 total signatures.

22. If congressional candidates obtain 1,500 signatures each – the requirement for their office, using the LPNH petitions, the plaintiffs will all obtain sufficient signatures to be listed on the ballot.

23. LPNH possesses at a minimum the names and addresses of 3,000 to 4,000 registered voters who signed LPNH nomination papers in 2016.

24. The plaintiffs may obtain signatures by means of their choosing, including in-person canvassing, email, U.S. mail, social media, among other methods.

25. On March 10, 2020, most towns in New Hampshire conducted annual elections and thousands of voters spent time during the day at their polling places to vote.

26. LPNH did not deploy canvassers to polling places to gather signatures on March 10, 2020.

27. On March 13, 2020, Governor Sununu issued an Executive Order declaring a state of emergency in New Hampshire due to the novel coronavirus.

28. Governor Sununu has extended the state of emergency through the present.

29. As of June 15, 2020, the Governor's "Stay at Home" Emergency Order expired.

30. As of June 15, 2020, the Governor's Emergency Order #16, which prohibited scheduled gatherings of ten or more people, expired and since then there has been no prohibition on large gatherings in New Hampshire.

31. On June 16, 2020, Governor Sununu issued Emergency Order 52, known as the Safer at Home order.

32. There were 51 days between June 15, 2020 and the deadline of August 5, 2020.

33. To gather 4,000 nomination papers in that period would require an average of 78 nomination papers per day.

34. As of June 29, 2020, New Hampshire beaches were fully open, restaurants were permitted to operate at 50% indoor capacity, and all businesses in New Hampshire were permitted to open subject to the Universal Business Guidance and, in some cases, industry specific guidance.

35. LPNH sought and got permission from a single Market Basket store in Bedford, New Hampshire, to set up a table outside the store during some period of time over the July Fourth weekend.

36. In a period of no more than three days, LPNH gathered 421 nomination papers from the table outside of Market Basket in Bedford.

37. There are hundreds of grocery stores in New Hampshire.

38. As of July 7, 2020, LPNH has gathered 803 nomination papers for state candidates and 426 for federal candidates.

39. LPNH has collected additional signatures that LPNH has not yet verified.

## Rulings of Law

The State refers to its pleadings in opposition to the motion for preliminary injunction, which discuss in detail the legal basis for the State's position. The State offers the proposed rulings of law below as conclusions that follow from the legal argument and authorities cited in its opposition pleadings.

1. The plaintiffs have not met their burden to prove entitlement to a mandatory preliminary injunction.

2. New Hampshire's ballot access signature requirements do not impose a severe burden on the plaintiffs' access to the ballot.

3. New Hampshire's ballot access signature requirements are reasonable and nondiscriminatory as applied to the plaintiffs.

4. The State has a sufficiently weighty interest to justify New Hampshire's ballot access signature requirements, namely, requiring candidates to show a level of support sufficient to gain ballot access and avoiding ballot clutter and overcrowding of the ballot. *Libertarian Party of New Hampshire v. Gardner*, 126 F.Supp.3d 194, 207-08 (D.N.H. 2015).

5. The plaintiffs can demonstrate no likelihood of success on the merits of their claims.

6. The plaintiffs can demonstrate no irreparable harm.

7. The public interest favors the State.

The State reserves the right to submit additional proposed findings of fact and rulings of law as the evidence at the preliminary injunction hearing and plaintiffs' arguments make necessary.

Respectfully submitted,

CHRISTOPHER T. SUNUNU,
GOVERNOR OF THE STATE OF NEW HAMPSHIRE

and

WILLIAM GARDNER, NEW HAMPSHIRE SECRETARY OF STATE

By their attorneys,

GORDON J. MACDONALD
ATTORNEY GENERAL

July 17, 2020

*/s/ Daniel E. Will*
Daniel E. Will, Bar #12176
Solicitor General

*/s/Laura E. Lombardi*
Laura E. Lombardi, Bar #12821
Senior Assistant Attorney General


New Hampshire Department of Justice
Office of the Attorney General
33 Capitol Street, Concord, NH 03301-6397
(603) 271-3650

Respectfully submitted,

CHRISTOPHER T. SUNUNU,
GOVERNOR OF THE STATE OF NEW HAMPSHIRE

and

WILLIAM GARDNER, NEW HAMPSHIRE SECRETARY OF STATE

By their attorneys,

GORDON J. MACDONALD
ATTORNEY GENERAL

July 17, 2020

*/s/ Daniel E. Will*
Daniel E. Will, Bar #12176
Solicitor General

*/s/Laura E. Lombardi*
Laura E. Lombardi, Bar #12821
Senior Assistant Attorney General


New Hampshire Department of Justice
Office of the Attorney General
33 Capitol Street, Concord, NH 03301-6397
(603) 271-3650

Case 1:20-cv-00688-JL   Document 19   Filed 07/17/20   Page 8 of 8

8

**CERTIFICATE OF SERVICE**

    I, Daniel E. Will, hereby certify that a copy of the foregoing defendants' preliminary injunction exhibit list was sent via the court's e-filing system to H. Jonathan Meyer, Esquire, counsel for the Plaintiffs.


July 17, 2020                                  */s/ Daniel E. Will*
                                                           Daniel E. Will