UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **LIBERTARIAN PARTY OF NEW HAMPSHIRE,** | |
| and | |
| **JO JORGENSON** | |
| and | |
| **SPIKE COHEN,** | |
| and | |
| **DARRYL PERRY,** | |
| and | |
| **JUSTIN O'DONNELL** | |
| and | |
| **ZACK DUMONT** | |
| and | |
| **ANDREW OLDING,** Plaintiffs, | |
| v. | Civil Case No.: 1:20-cv-00688 |
| **GOVERNOR CHRISTOPHER T. SUNUNU** In his official capacity as Governor of the State of New Hampshire | |
| and | |
| **WILLIAM GARDNER,** in his official capacity as Secretary of State of the State of New Hampshire, Defendant | |

# PLAINTIFFS' REQUESTED FINDINGS OF FACT AND RULINGS OF LAW

NOW COME the Plaintiffs, incorporating the joint statement of agreed upon facts and stating as follows:

A. <u>Findings of Fact</u>

1. The Libertarian Party of New Hampshire has had a presence in New Hampshire electoral politics since 1973.
2. It has had candidates for state-wide office on the election ballot since 2008, as well as in earlier cycles.
3. This history demonstrates that it has community support.
4. Through most election cycles, it has achieved ballot access through securing nomination papers.
5. The Party has secured these papers through the work of volunteers and paid solicitors.
6. This method used by the Party to gain signatures on nomination papers have included:
   a. Canvassing tables outside of retail establishments.
   b. Door to door canvassing.
   c. Staffing petition tables at public events.
   d. Securing petition signatures through mailings and emails.
7. It has been the Party's experience that attempting to secure signatures through mail and email solicitations has been unsuccessful because it has had a very low yield of signed petitions.

8. The Party has utilized these same methods during the 2020 election cycle with at least the same degree of effort.
9. Their efforts have been substantially less successful than in past cycles because of:
   a. Justified health concerns of voters about engaging with solicitors at their homes or in front of retail establishments due to concern about the infectious nature of COVID-19 and the Governor's Stay at Home order.
   b. The cancellation of almost all large and medium scale events since March.
   c. The reluctance of retail establishments since the start of the pandemic to have solicitation tables located on their properties.
   d. The Governor's order banning the operation of non-essential businesses between March 16, 2020 and June 15, 2020.
   e. The health concerns of potential solicitors, both volunteered and paid.
10. As a result of the obstacles created by the pandemic the same activities have been about 25% as successful as in past cycles.
11. The exchange of nomination papers between the solicitor and the voter, as well as communication pertaining to the signing of nomination papers, requires physical interactions that are closer than 6 feet.
12. These interactions are contrary to the safety guidelines set forth by the CDC and other public health authorities.
13. In order to secure enough petitions to meet the statutory requriements, the Plaintiffs need to secure about 1/3 above those requirements to compensate

for signed papers that are not certified by the Supervisor of the Checklist or accepted by the Secretary of State because of technical errors.

14. Between March 16, 2020 and June 15, 2020, the Governor's Stay at Home order was in effect. During that time Plaintiffs' attempted to secure signatures through email and regular mail but with a very low success response.

15. The Plaintiffs have attempted unsuccessfully through correspondence with the Defendants to secure an executive order modifying the nomination petition requirements because of the conditions of the pandemic.

16. The New Hampshire Select Committee on 2020 Emergency Election Support has recognized that:

    Legal requirements for independent candidates and third parties to get petition signatures are complex in normal times. In this time of social distancing, Stay at Home orders and the like, it may make those actions impossible on a practical basis.

17. Adding Plaintiffs to the ballot would not create ballot clutter.

B. <u>Proposed Rulings of Law</u>

1. The right of political parties and candidates to ballot access is a fundamental First Amendment right as is the right of voters who choose to associate together to express their support [of the candidates] and the views he espoused." <u>Anderson v. Celebrezze</u>, 460 U.S. 780, 806 (1983).

2. Third party candidacies benefits "the diversity and competition in the marketplace of ideas". <u>Libertarian Party of New Hampshire v. William Gardner</u> 843 F3d 20, 32 (2016) (quoting from <u>Anderson</u> at 460 U.S. 794).

3. The First Amendment prohibits any severe burden on ballot access unless justified by a compelling state interest which is narrowly tailored to serve that interest. <u>Anderson v. Celebrezze</u>, 460 U.S. 780 (1983), <u>Burdick. V. Takushi</u>, 504 U.S. 428 (1992).

4. Under the conditions of the pandemic, the requirements that candidates for vice president, governor and senator secure 3,000 verified signatures, and for the House of Representatives 1,500 signatures, creates a severe burden on the Plaintiffs' ballot access because those conditions greatly magnify the effort and resources required to meet those thresholds.

5. The securing of First Amendment rights should not require the Plaintiffs to engage in nomination solicitation activities which put their health, and the health and safety of potential voters, at risk.

6. Unless the number of nomination signature requirements are modified, there is a substantial risk that the Plaintiffs will suffer irreparable harm as a result of being denied ballot access.

7. Given Plaintiffs' success in securing ballot access in past election cycles, and their active efforts to overcome the obstacles created by the pandemic during this cycle, it would be fundamentally unfair to deny them ballot access based upon pandemic circumstances outside of their control.

8. Enforcement of the statutory requirements under the conditions of the pandemic is not narrowly tailored to the securing of a compelling state interest.

9. Where candidates of a party are threatened by denial of ballot access, despite a history of demonstrated community support, because of circumstances outside of their control, the appropriate legal remedy is to order that they be placed on the ballot.
10. Granting Plaintiffs ballot access would not harm any compelling interest of the State.
11. Plaintiffs have demonstrated a strong likelihood of prevailing on the merits.
12. The balance of equities favor the Plaintiffs.
13. The public interest favors granting injunctive relief.

Respectfully submitted,

Libertarian Party of
 New Hampshire

By It's attorneys,

Backus, Meyer & Branch, LLP

Dated: 7/17/20    By:    /s/ Jon Meyer
Jon Meyer, NH Bar # 1744
116 Lowell Street, P.O. Box 516
Manchester, NH 03105-0516
603-668-7272
jmeyer@backusmeyer.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been delivered electronically, via ECF/NexGen, this 17th day of July, 2020 to all counsel of record.

                                        <u>/s/ Jon Meyer</u>

                                        Jon Meyer